Andrew M. Kohlmetz, OSB #955418
Raivio, Kohlmetz & Steen, P.C.
741 SW Lincoln Street
Portland, OR 97201
Tel: (503) 224-1104
Fax: (503) 224-9417
Email: andy@rkslawyers.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,  <br>   Plaintiff,  <br>vs.  <br>DEPRI MARQUIS SPENSER,  <br>   Defendant. | Case No. 3:12-cr-00069-01-SI  <br><br>DEFENDANT'S SENTENCING MEMORANDUM  <br><br>(Sentencing Scheduled for March 13, 2013, at 2:30 P.M.) |

### I.    Introduction

The Defendant is scheduled to be sentenced before your Honor on March 13, 201. On October 17, 2012 pursuant to a plea agreement under FRCrP 11(c)(1)(C), MR. Spenser pleaded guilty to Count 1 of the Indictment herein on October 17, 2012.

### II.    The Parties Sentencing Recommendations

Pursuant to FRCrP 11(c)(1)(C), the Plea Agreement calls for a sentence of 120 months in the custody of the Bureau of Prisons to be followed by a 10 year period of supervised release.

### III. The Advisory Guidelines Calculations

The parties have stipulated in the Plea Agreement to a total offense level of 33. For the reasons noted in the Presentence Report in its "Recommendation" section and at paragraph 44, the PSR author calculates a total offense level of 35. The defense has no objections to the calculations contained in the PSR. There is no dispute concerning Mr. Spenser's criminal history category ranking of "II." The guidelines range stipulated to by the parties is 151-188 months, while that resulting from the PSR calculations is 188-235 months.

### IV. Factors In Support of the Parties' Recommended Sentence.

This section will briefly touch on some of the broader statutory factors listed at 18 USC § 3553 which the defense feels support the resolution crafted by the parties regardless of the court's final Guidelines determinations. The Guidelines enjoy no presumption of reasonableness before the trial court and are but one factor to consider in fashioning a sentence that is under 3553 "sufficient but not greater than necessary" to comply with the purposes of the of the Sentencing Reform Act. *United States v. Nelson, 555 U.S. 350, 352 (2009)*.these other important factors for the court's consideration include: The nature and the circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to promote certain goals (to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment), to afford adequate deterrence, to protect the public, and to provide the defendant with adequate rehabilitative opportunities. 18 USC 3553 (a)(1) and (a)(2). Within this broader statutory framework we point to the following elements we believe support the 18 year resolution.

    a. **The Nature and Circumstances of the Offense.**

While the offense conduct itself is accurately laid out in the PSR, the defense wishes to emphasize that despite the serious and repugnant nature of the conduct that this is Mr. Spenser's first conviction of any real seriousness. To this point Mr. Spenser's conviction history was primarily related to repeatedly driving without a valid driver's license and minor drug offenses.

Prior to his pre-trial detention in this case Mr. Spenser's longest single period of incarceration was 9 days. Mr. Spenser has already served 378 days in custody (as of this writing.) Despite the government's allusions and suggestions that Mr. Spenser has been involved in prostitution related activities since 2008, the fact remains that this young man of 25 years of age is being sentenced for what is essentially a one-time event involving the transportation of two minor females from Tacoma, Washington, to Portland, Oregon for the purpose of them engaging in prostitution. While not minimizing the gravity of this offense it must be noted that there is no evidence that Mr. Spenser caused either of the two listed victims to initially turn to prostitution. Rather, Mr. Spenser's role was an opportunistic one.

    b.  **The History and Characteristics of the Defendant.**

Depri Marquis Spenser was born to Darlene and Lawrence Stone on June 6, 1987 in Tacoma Washington. His parents' relationship was never strong. His father was routinely absent from the home and was not involved more than superficially in Depri's upbringing. The family reports that his father had extensive drug, alcohol, and mental health problems.

Depri's Mother, Darlene Spenser confirms Depri's father suffers from bi-polar disorder. In addition to his mental health and substance abuse issues, she relates that Lawrence Anthony Stone was a drug dealer who served 3 years in a California prison for transporting drugs when Depri was approximately 12 years old. Darlene Spenser married Depri's step-father, Darrell Johnson, when he was approximately 2 years old. Despite the divorce, Lawrence Stone would periodically attempt to inject himself into Depri's life. According to Darlene Spenser, Depri was often torn as a child between feelings of abandonment and then attempts at redemption in his erratic father's eyes. She relates that Lawrence Stone is 46 years old and has never had a job Depri went back and forth between his biological dad and his mother and step-father.

Darlene Spenser said Lawrence Stone was an extremely negative influence on young Depri's social development. He exposed Depri to his drug use and drug dealing and the criminals with whom he associated. He would also disparage his mother and step-father which, according to her resulted in several years of behavioral issues for Depri. She and Darrell tried to include

Lawrence in family counseling, but Lawrence would use the sessions to talk about himself and nothing productive ever occurred. Darlene believes Lawrence was a terrible role model for Depri. She attributes some of Depri's issues to his dysfunctional relationship with his father. Lawrence's abandonment of Depri has been an ongoing issue for her son. According to Darlene, Lawrence's release from prison was extremely traumatic for Depri who was hoping for a renewal of their fractured father-son relationship upon his release. The relationship never developed has hoped.

According to Darlene Spenser, when Depri was in the 4th grade, one of Depri's teachers said he needed special attention. She said she took him to a Dr. James Schneller in Tacoma, Washington. (Dr. Schneller's office was contacted and records five years or older have been destroyed). She said she and her husband were young parents and didn't know what to do. Depri had problems concentrating and was hyperactive. He was diagnosed with Attention Deficit Hyperactive Disorder. He was prescribed Adderall when he was in the 3rd or 4th grade.

Around this time, Depri was appointed a guardian at lithium, Steve Downing, by the Pierce County Court. Gerald Burke was Depri's court appointed attorney. According to Depri's mother, the court actions were centered on visitation issues with Depri's biological father and were necessitated by the father's substance abuse and mental health issues.

Depri Spenser's own account follows his mother's statements. He reports his father went to jail when he was 12 years old. He said his father went to jail for drug charges and did time at San Quentin in California. He said he was forced to grow up. He said he felt like he knew too much for a kid his age. He said his dad wrote to him and kept in touch until he was released from San Quentin, then disappeared. He felt abandoned by his dad. When his dad was released from prison his mom made him go live with him. He said his dad wasn't prepared for living him. His mother was with his step-father, Darrell Johnson since Depri was two years old. His mother and step-father separated when Depri was about 16 or 17 years old. His mother states that she and Darrell still get along well. She has another son, Darmon, from her marriage to Darrell.

Depri said he and Darrell got along, but weren't close. Darlene Spenser reports that Darrell Spenser currently works for the Pierce County Transit Department. He's been with them for the past five years. Prior to that, Darrell was a corrections officer at Sea-Tac Federal Detention Center in the detox unit. Darlene states he was a good provider. Darlene has worked at Group Health Co-operative in Sea-Tac for 12 years. Darlene remains a valuable support to Depri as he enters into the service of his sentence.

Depri also has two uncles who continue to serve as his role models. They are involved in non-profit work and community outreach work. Darlene Spenser's brother, Alex Davis works with troubled Juveniles at the NW Leadership Foundation. Depri's paternal uncle, Eddie Spenser owns a courier business, Eagle Express Courier, and Depri worked there with his uncle when he was stopped going to Green River Community College in 2007. Another paternal uncle, Jarome Spenser owned an asbestos removal business. Depri worked off and on with him, up until 18 months ago when the business closed. After Jarome's business folded, Depri helped his grandmother, Sheila Spenser, working on her five duplexes doing lawn work, cleaning, and repairs. She owns five duplexes in Tacoma.

Depri Spenser is father to three children. He was between high school and community college when his first child, Kiara, was born. He was a stay at home dad, while Kiara's mother worked. After graduating from high school in Tacoma, he had been out of high school for one year and was working off and on at a temporary agency and also at the Boys and Girls club. He then enrolled in Green River Community College in Auburn, WA, in the Fall of 2006. He soon withdrew because of financial reasons and the difficulty of caring for Kiara. He re-enrolled in the Fall of 2007, even playing basketball for the Community College team. Once again however he found himself overwhelmed and withdrew in November of that year.

In 2006 he met the mother of his other two children, Melia McGhee. According to Melia, Depri had just graduated from high school when she met him in 2006. She said they were together from 2006 to 2009. In 2007 they lived with her mother in Puyallup, WA. She related he had started school at Green River CC and played basketball for them. In 2008, they lived together in Lakewood, WA and Tacoma, WA. Melia stated he has been a good father and has

DEFENDANT'S SENTENCING MEMORANDUM - 5

Raivio, Kohlmetz & Steen, P.C.
741 SW Lincoln Street
Portland, OR 97201
(503) 224-1104

done many kind things for their sons. She said he bought them clothing and necessities, financed birthday parties, and generally, loves them very much. She said the boys as really love him. When the boys turned three, she said she was having financial troubles and Depri organized and paid for their birthday party and helped her out with utility bills.

Depri's maternal side of the family is deeply religious. His grandfather is pastor of the Eastside Community Church of God in Christ in Tacoma, Washington. He is close to his grandparents, Alfred C. Davis and Mary L. Davis and has spent many hours doing chores for them; yard care, cleaning, etc. He said his family depended on him to cut grass and help clean and maintain his grandfather's church.

Depri relates that he has consistently tried to maintain gainful employment in an effort to help with the upbringing of his children. He reports that when he was a teenager he volunteered at the Davies Boys and Girls Club in Tacoma. He took care of the children in the 1st – 4th grades during their snack and rest time. He got their lunches and snacks, supervised their gym and outdoor time, and sometimes filled in as a coach. He reports that his first real job was at his dad's restaurant, Mr. Texas, in Tacoma.

He worked for numerous temp agencies when he was younger and had jobs through them with the Safeco Field concession for two or three seasons while he was in high school, as well as at Porter's BBQ Restaurant. He worked one season cleaning up the field after games at Chaney Field in Tacoma. He worked with his paternal uncle, Eddie Spenser, assisting in Eddie's courier service. business. His last job was with his maternal uncle, Jarome Spenser, who owned an asbestos removal company (Spenser Abatement). At the end of 2010, the company was sued, his uncle lost contracts and Depress lost his job.

Depri is extremely remorseful concerning the people whose lives have been impacted by his poor choices: In particular he expresses his remorse for the impact his actions have had on the victims in this case, more recently he has also recognized the pain his choices have inflicted on his mother and his siblings, his grandparents, and his children. His mother is currently diagnosed with stress induced asthma related to Depri's legal situation.

Depri's father, Lawrence Stone, has never seen Depri's twin boys. When Depri was incarcerated at Sea-Tac, Lawrence Stone reached out to Depri and seemed supportive. However, past patterns remerged. After Depri was sent to Oregon, Lawrence made no further contact. Depri was and remains deeply hurt by his father's abandonment and lack of participation in his life. He has spent years seeking approval from him. Depri doesn't want his children to feel he has abandoned them while he is incarcerated. He regrets that he will miss a large portion of their lives while he's in custody.

The effects of parental abandonment and in-particular abandonment through incarceration can have grievous effects on children. A 2001 University of California study: Effects of Parental Incarceration on Young Children (Ross D. Parke, U.C. Riverside and K. Alison Clarke-Stewart, UC Irvine) discusses some concerns the defense feel apply to Depri Spenser's situation.

According to the study: Fathers account for 90% of incarcerated parents. The behavioral consequences can be severe, absent positive intervention – emotional withdrawal, failure at school, delinquency and risk of intergenerational incarceration. In light of the results of this research on separation and attachment, it is not unexpected that when their parents are incarcerated, young children (ages 2 - 6 years) have been observed to suffer a variety of adverse outcomes that are consistent with the research on the effects of insecure attachments (Johnson, 1995). Children exhibit internalizing problems such as anxiety, withdrawal, hyper vigilance, depression, shame and guilt (Bloom & Steinhart, 1993; Dressler et al., 1992). And, perhaps, most clearly, young children exhibit externalizing behaviors such as anger, aggression, and hostility toward caregivers and siblings (Fishman, 1983; Gaudi 1984, Johnston, 1995; Jose-Kampfner, 1995; Sack et al, 1976).

Depri now recognizes that his own experience of parental abandonment played a germinating role in the decision that led him to appear before this court for sentencing. He cannot take those decisions back, nor undo the damage they have already caused. Nonetheless he

DEFENDANT'S SENTENCING MEMORANDUM - 7

is committed to do what he can to minimize their impact on his children going forward in the hopes that they can avoid the same pitfalls that ensnared him, and his father before him.

Depri is involved and interested in a meaningful way with his children. He is focused on maintaining contact with his children. His daughter, Kiara, is 7 years old and his twin boys, Aldrick and Amari are 4 years old. His children will go through their early adolescent and adolescent years without his presence. He is hopeful the Bureau of Prison will assign him to a facility that isn't too far from his children and family, so his family can afford to visit him and he can have continuing contact with all of them. When he is released, he would like to complete college, be present and participatory with his children, and with continued family support, he would like the chance to rebuild his life.

### c. The Need for The Sentence Imposed

The sentence contemplated is one of 10 years in length and will be Mr. Spenser's first (and hopefully last) significant incarceration. It is being contemplated for an exceptionally serious crime. However, this case is atypical as a single instance and in the otherwise brief nature of the offense conduct. It is hard to imagine that this sentence can be viewed as overly lenient in these circumstances. It certainly serves as a powerful deterrent to others and will incapacitate the defendant himself for an exceptional period of time. Furthermore, upon his release Mr. Spenser will be placed on 10 years of supervised release for an offense that carries some of the most stringent restrictions on post incarceration liberty imaginable.

### V.    Conclusion

For all of the reasons outlined above and based on the previous submissions of the government, and the PSR, the defense respectfully requests that this court sentence Mr. Spenser to the custody of the Bureau of Prisons for 120 months to be followed by ten years of supervised release.

Because he anticipates being released in the Tacoma, Washington area on upon completion of his sentence and because he does have family ties in Tacoma and the surrounding area he respectfully requests this court recommend him for designation to the Federal Correctional Institution at Sheridan or closest appropriate facility to Tacoma, Washington.

Dated this 7th day of March, 2013.

**/S/ Andrew M. Kohlmetz**
Andrew M. Kohlmetz
Raivio, Kohlmetz & Steen, PC
741 SW Lincoln Street
Portland, OR 97201
Attorney for Defendant